**STATE of Missouri, Respondent,**

v.

**Harold Gene McANULTY, Appellant.**

**No. 54033.**

Supreme Court of Missouri,
Division No. 1.

March 12, 1973.

John C. Danforth, Atty. Gen., Leland B. Curtis, Assist. Atty. Gen., Jefferson City, for respondent.

Lawrence O. Willbrand, St. Louis, for appellant.

WELBORN, Commissioner.

Appeal, filed prior to January 1, 1972, from judgment of conviction and seven

years' sentence on charge of receiving a stolen motor vehicle.

When Mrs. Kathleen Podhorn went to work at the Proctor & Gamble plant in St. Louis, at around 7:30 A.M. October 18, 1967, she parked her 1966 Chevrolet in a parking lot near her place of employment at 169 East Grand. When she left her work at 4:30 P.M., the auto was not where she had parked it.

Shortly after 5:00 P.M. on the day in question, two St. Louis plain clothes police officers stopped their automobile near a gate opening in an 8-foot galvanized metal fence which surrounded the area where an automobile salvage business was conducted by Harold Gene McAnulty at 4125 North Broadway, some nine blocks from where Mrs. Podhorn had parked her car. The officers got out of their car and approached the chain link gate in the opening. Through the gate they saw three men inside the salvage yard, some 40 feet from the gate. One had an acetylene torch with which he was cutting on an automobile. McAnulty was one of the three men. When the men saw the officers, two of the men ran, climbed the fence and disappeared. The officers ran to the front of the building at the Broadway address, went through the customers' area and out the back door into the yard. McAnulty was standing near the automobile chassis with a small fire extinguisher with which he was extinguishing a fire. According to the officers, the automobile in question had been "bisected" with an acetylene torch. The front portion, including the grill and front fenders, was on the ground, about four feet from the frame and motor. The rear portion was removed and placed against the fence. The top and doors had been removed. "All that remained of this automobile being intact were the wheels, transmission and motor."

At that time, the officers had no report of a stolen 1966 Chevrolet which matched the description of the vehicle they found. Various items found in the parts of the dissected vehicle led to its identification as Mrs. Podhorn's auto.

Appellant was charged with stealing the automobile and with receiving it, knowing it to have been stolen. The state elected to proceed on the latter charge. The state's evidence was substantially as above stated. No evidence was offered by the defendant.

## I. Sufficiency of Evidence

■ Appellant contends that "the state failed to adduce a submissible case of receiving stolen property and failed to produce probative evidence of scienter or receipt of the property in question." Appellant contends that there was no evidence that he was ever in possession of the vehicle, that if he did have possession, there was no evidence which would warrant the inference that he did so, knowing that the vehicle was stolen. He cites, in support of his contention, State v. Taylor, Mo., 422 S.W.2d 633, and State v. Magers, Mo., 452 S.W.2d 198.

1. Possession. The vehicle was found at appellant's place of business. Appellant was attempting to extinguish a fire in it. This is sufficient evidence of appellant's possession.

2. Knowledge. State v. Taylor has held that, in a case such as this, the defendant must have actual knowledge of the stolen character of the goods when he received them. However, Taylor acknowledges that such knowledge may be shown by circumstances. The method of disposition of the vehicle, including efforts to destroy identifying marks, is sufficient circumstantial evidence from which knowledge that the vehicle was stolen may be inferred.

3. Receipt. State v. Magers, supra, does hold that possession of recently stolen property is no basis for an inference that the possessor received, rather than stole, the property. Here, however, there were additional circumstances. There was evi-

dence from which involvement of others could have been found—the two men who fled. Such additional evidence would have permitted the inference that they were the thieves and appellant the recipient of the property. See People v. Galbo, 218 N.Y. 283, 112 N.E. 1041, 1044 [3].

## II. View by Jury

In the course of the trial, the jury, accompanied by the judge, the defendant and counsel for state and for the defendant, went to the police garage, three or four blocks from the scene of the trial. There they viewed, on a flat bed truck, a display, identified as State's Exhibit 13, of the parts of the stolen vehicle as it had been dismantled when the police entered the lot on which it was discovered. Appellant objected to the procedure at the time. He now contends that the procedure "unduly emphasized Exhibit 13," and further, that the exhibit was not preserved for the record, not properly identified and could easily have been photographed.

 The condition of the vehicle was relevant in the proof of the charge. The question of whether or not the jury should be permitted to go outside the courtroom to view relevant evidence which cannot be brought to the courtroom is one for the trial court in the exercise of its discretion. State v. Cuffie, Mo., 403 S.W.2d 633, 634–635 [3–5]. No abuse of discretion appears here. That alternative methods of presenting the evidence were available does not render what was done an abuse of discretion. The trial court carefully instructed the jury before leaving the courtroom, nothing untoward occurred at the scene of the view and no improper prejudice to the right of appellant to a fair trial has been demonstrated. The value of the parts as disassembled is of no significance, inasmuch as defendant was charged with receiving a stolen motor vehicle. By § 560.-270, RSMo 1969, V.A.M.S., the offense of receiving stolen property is punishable "to the same extent as for the stealing of the

property so bought or received." Stealing a motor vehicle is a felony, without regard for its value. § 560.161, subd. 2(2), RSMo 1969, V.A.M.S. Furthermore, Mrs. Podhorn's testimony that the vehicle had been purchased in January or February, 1966 for $3,400 would have supported a finding that it had a value of over $50 at the time it was stolen.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.