**STATE of Missouri, Respondent,**

**v.**

**Willie Mae JOHNSON, Appellant.**

**No. 60695.**

Supreme Court of Missouri,
en banc.

April 10, 1979.

Rehearing Denied May 17, 1979.

Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Senior Judge.

This opinion, written on recent reassignment, involves a case wherein defendant was found guilty by a jury of receiving stolen property and was sentenced to imprisonment for four years. She appealed to the Missouri Court of Appeals, Eastern District, which reversed. We ordered the case transferred and we now decide it as though here on direct appeal. Mo.Const. Art. V, § 10. We affirm.

On June 9, 1975, detectives of the St. Louis Metropolitan Police Department received a telephone call from a confidential

informant whom these officers had known for about a year and a half. During that time he had furnished information to the officers on five occasions. This information led to only one conviction but one of the officers testified that they had not ever received information from the informant which they later found to be incorrect.

The informant told the officers that two men and two women had been observed carrying into a vacant building at 4752 Ashland some tape recorders which had been stolen in St. Louis County. He stated that the people were going to attempt to remove identification markings and serial numbers, and then move the recorders immediately. The building was described as a house with brown and yellow trim around the windows, located across the street from the park. The informant did not give the names of the four persons, nor did he state from whence the recorders had been stolen or how he knew they had been stolen.

Three detectives departed immediately for the address given by the informant. Due to the time element, they did not attempt to contact the St. Louis County Police Department for information as to a burglary in which tape recorders had been taken and they did not obtain information as to ownership of the building. When they arrived, one officer went to the front door and officers Gober and Dorn went to the rear of the house to block escape of any persons leaving the building when the other officer knocked at the front door. When they arrived at the back of the house they saw two men and two women seated on the floor of the kitchen wiping cassette tape recorders with rags and some kind of liquid. The window had no curtains or blinds and the people were readily seen by the officers standing in the yard back of the house. The officers could see no furniture and the house appeared to be vacant and in a bad state of repair.

When the officer at the front door knocked, announced himself as a police officer and asked to be admitted, there was immediate activity inside the house. One of the men jumped up and was heard to

say, "It's the cops." He then ran out the back door onto the porch but he was pursued back into the house by officers Gober and Dorn. The officers placed the four people, one of whom was defendant, under arrest and seized seventeen cassette tape recorders and a closed circuit television set, all of which were marked Frost Field School, Berkeley School District.

Prior to trial defendant filed a motion to suppress as evidence the tape recorders and the television set. An evidentiary hearing was held, at which the above facts were developed. The evidence also indicated that the vacant house was owned by defendant's mother who lived in Berkeley, Missouri. The motion to suppress was overruled and the case proceeded to trial.

The first issue for resolution is whether the trial court erred in overruling defendant's motion to suppress evidence seized at the time of defendant's arrest and in permitting some of that evidence to be introduced at the trial.

The police officers received information from a reliable informant. They had known him for a year and a half during which he had furnished information on five different occasions. In no instance had the information furnished proved thereafter to be incorrect. In one instance the information furnished by this informant led to a conviction. The information furnished in this intance was that two men and two women had been observed carrying cassette tape recorders into a vacant building at a specific address and the building was further described by its location with reference to a park and the color of trim around the windows. The officers were told that these people were going to try to remove serial numbers and identifying marks from these stolen tape recorders and then immediately move them elsewhere.

This information called for a prompt response by the officers if they were to apprehend the people with the stolen recorders. Consequently, the officers made no attempt to check with county police about a burglary involving tape recorders and they did not stop to check on ownership of the vacant

house. Instead, they went promptly to 4752 Ashland, the address given by the informant. There they found the house described by the informant. One officer went to the front door to knock and identify himself and then ask for admittance. Before doing that, however, two of the officers went to the rear of the house to prevent any people inside from escaping through the back door. When they reached the back of the house, they readily saw through the windows that four people, two men and two women, were sitting on the floor holding tape recorders which they were rubbing and wiping with rags and some liquid.

This corroborated the information furnished by the informant in that it placed two men and two women in the unfurnished, vacant house holding tape recorders (the things informants said they had carried into the house). It also corroborated the information that these people would be attempting to remove serial numbers and identifying marks because the two officers could see these four people using rags and a liquid rubbing and wiping the tape recorders. Finally, when the officer at the front door knocked and identified himself as a police officer, there was much scurrying around in the house and one of the four attempted to flee by running out the back door.

■ The information given to the officers which was corroborated in many respects by what the officers saw before entering the house was sufficient to indicate to the officers that a felony had been committed or was being committed at that time. It justified the officers in arresting the four people, including defendant, and, incident to said arrests, in seizing the tape recorders and the television set which they had seen through the window and were in plain view in the kitchen, some of which were being held by defendant and her companions. *State v. Wiley,* 522 S.W.2d 281 (Mo. banc 1975).

■ Defendant argues that this corroboration cannot be utilized because it came only after the officers had entered the back yard and observed defendant and her

companions through the window. However, even when a technical trespass occurs, the facts can be such that a subsequent arrest and seizure of property incident thereto are not made unlawful. *State v. Vineyard,* 497 S.W.2d 821, 824 (Mo.App. 1973). See also *United States v. Taylor,* 428 F.2d 515, 520 (8th Cir. 1970); *United States v. Young,* 322 F.2d 443, 445 (4th Cir. 1963). In this case one of the officers was going to the front door and knock, and then advise that he was a police officer. Apprehending that the people might leave by the back door and escape, two of the officers went to the rear of the house to prevent such escape. When they did that and were standing in the back yard they saw that which was easily observable through the uncovered window, viz., defendant and her companions inside the house attempting to remove identification from the tape recorders. We conclude and hold that whatever technical trespass was involved did not make the subsequent arrest and seizure unlawful.

The second issue for resolution is defendant's contention that the state failed to make a submissible case for the reason that the evidence showed only possession by defendant of the tape recorders and there was no evidence to show that defendant received the property knowing it to have been stolen.

This issue is resolved by the decision of this court in *State v. McAnulty,* 491 S.W.2d 259 (Mo.1973). In that case a Mrs. Podhorn placed her automobile on a parking lot when she went to work at 7:30 a. m. It was gone when she returned to the parking lot at 4:30 p. m. Shortly thereafter, at about 5:00 p. m., two officers parked their car near the gate to an automobile salvage yard operated by defendant McAnulty. This was about nine blocks from the lot where Mrs. Podhorn had parked her automobile. At this time the officers did not know about the theft of the Podhorn car, but as they approached the salvage yard gate they observed three men around an automobile, one of whom was using an acetylene torch to cut it up. When the men saw the officers approaching, two of them

ran and escaped. The third man, McAnulty, did not run. He had a fire extinguisher in his hands and was using it to try to extinguish a fire in the automobile.

The automobile being cut up was ascertained subsequently to be the Podhorn car and McAnulty was arrested. He was charged by the State with stealing the automobile and also with receiving it, knowing it to have been stolen. The State elected to proceed on the second charge, offering the evidence outlined above. The defendant offered no evidence. The jury convicted defendant on the charge of receiving the stolen automobile.

On appeal this court affirmed the conviction of McAnulty. In so doing the court held that there was sufficient evidence (1) that McAnulty possessed the automobile, (2) that he had knowledge that it had been stolen and (3) that McAnulty had received rather than stolen the Podhorn automobile.

■ The case we now consider is remarkably similar to McAnulty. In that case the evidence to show possession and knowledge consisted of proof that defendant was standing by the vehicle on his salvage yard while another was cutting it up and that he was trying to extinguish a fire which was burning in the automobile. Here the evidence to show possession and to permit an inference of knowledge that the tape players were stolen was that defendant and three other persons were seated in a room with the stolen tape recorders and T.V. Defendant was holding one of the tape recorders and was endeavoring to remove therefrom the marks which identified them as having come from the Frost Field School in the Berkeley School District.

On the question of whether the evidence was sufficient to permit a finding that defendant received rather than stole the automobile, the court in McAnulty stated, 491 S.W.2d at 260–61:

"Receipt. State v. Magers [Mo., 452 S.W.2d 198], supra, does hold that possession of recently stolen property is no basis for an inference that the possessor received, rather than stole, the property. Here, however, there were additional circumstances. There was evidence from which involvement of others could have been found—the two men who fled. Such additional evidence would have permitted the inference that they were the thieves and appellant the recipient of the property. See People v. Galbo, 218 N.Y. 283, 112 N.E. 1041, 1044[3]."

■ In this case, in addition to the evidence of defendant and others having the tape recorders in their possession and attempting to obliterate the identifying markings, there was evidence that when the officers knocked on the door and the four people became aware of their presence, one of the four attempted to flee. The evidence is so similar to that in McAnulty that the language therein concerning receipt of the property by defendant can be paraphrased to fit this case in these words:

Receipt. State v. Magers, supra, does hold that possession of recently stolen property is no basis for an inference that the possessor received, rather than stole, the property. Here, however, there were additional circumstances. There was evidence from which involvement of others could have been found—the three other people who were trying to remove identification markings, one of whom attempted to flee.

Such additional evidence would have permitted the inference that they—or at least the one who attempted to flee—were the thieves and appellant the recipient of the property. See People v. Galbo, 218 N.Y. 283, 112 N.E. 1041, 1044[3].

Judgment affirmed.

MORGAN, C. J., BARDGETT, RENDLEN, JJ., and WELBORN, Special Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

SIMEONE, J., not sitting.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

DONNELLY, Judge, dissenting.

The determinative question on this appeal is whether there was sufficient evidence that appellant *received* stolen goods *from another.*

"The rule is well established that conjecture, suspicion or surmise is not sufficient as a basis of conviction." *State v. Wilson*, 345 Mo. 862, 869, 136 S.W.2d 993, 996 (1940).

"An inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing." *State v. Cobb*, 444 S.W.2d 408, 414 (Mo. banc 1969). In other words, the unexplained possession of property recently stolen, as was the case here, is evidence that the possessor is guilty of a wrongful *taking* of the property. However, the unexplained possession of property recently stolen does not give rise to the inference that the possessor is guilty of the offense of receiving stolen property from another under § 560.270, RSMo 1969. *State v. Magers*, 452 S.W.2d 198, 200 (Mo.1970). Appellant cannot be both the thief and the receiver of stolen property. She cannot receive stolen property from herself.

The record is barren of any proof tending to show that appellant received the stolen property from another. The State contends *receipt* may be found from the evidence of her efforts to remove identifying marks on the stolen property, that three other persons were involved, that one of them attempted to flee, and that appellant was not in possession of all the stolen property, relying on *State v. McAnulty*, 491 S.W.2d 259 (Mo.1973). I would overrule *McAnulty*. The evidence in this case is more consistent with guilt of stealing than with guilt of receiving stolen property from another. Of course, appellant may not be guilty of both offenses. In any event, it seems to me that only by resorting to speculation and conjecture outside of and beyond the scope of the evidence may it be found that appellant received stolen property from another. The verdict of guilty should not be permitted to stand.

I respectfully dissent.