**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Thomas Eldon HAYES,
Defendant-Appellant.**

**No. 10774.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 10, 1980.

Motion for Rehearing Denied
March 31, 1980.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John Newberry, Springfield, for defendant-appellant.

BILLINGS, Presiding Judge.

Defendant Thomas Eldon Hayes was found guilty by a Greene County jury of receiving stolen property [§ 560.270, RSMo 1969] and his punishment assessed at three years imprisonment. In this appeal he seeks reversal of the judgment entered on the jury's verdict, contending his motion to suppress statements he made to officers should have been sustained because he was not given *Miranda* warnings and that evidence obtained as a result of his statements was unconstitutionally tainted and should not have been admitted at trial. Also, that the state's evidence was insufficient to support his conviction and that instructional errors were committed by the trial court. We affirm.

Defendant was initially charged in this case in a two-count information, both alleging he received stolen property. The first count involved a Hydra-Sport boat, a 150 h.p. Mercury outboard motor, an Easy Trail boat trailer, and a Shakespeare trolling motor. The second count involved a 1973 Ranger boat, a 1973 model 85 h.p. Mercury outboard motor, a boat trailer, and a Motor Guide trolling motor. The trial court granted defendant's motion for severance

of the two counts and trial was held on count one.[1]

## MOTION TO SUPPRESS

Defendant's motion to suppress his statements to investigating officers and tangible evidence obtained by the officers as a result of his statements, was two-pronged. He alleged that the failure of the officers to give him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rendered his statements involuntary and tainted the tangible evidence under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). He also averred the statements and resulting evidence were obtained by fraud and deceit of the officers.

The trial court, following an evidentiary hearing, overruled defendant's motion. In this appeal defendant has abandoned the fraud and deceit allegation but pursues the lack of *Miranda* warning. He contends that because the officers knew or suspected he had received stolen property that the focus of investigation was on him as a suspect, and, therefore, *Miranda* warnings were necessary. The state admits that the investigating officers did not give defendant *Miranda* warnings but says the warnings were not required because his statements did not result from a custodial interrogation but resulted from a routine investigation. Furthermore, the state says, the focus of the officers' investigation was not on the defendant as a suspect and, conversely, the officers thought defendant a possible victim of a crime.

During the night of May 30, 1975, a bass boat rig, consisting of a 1975 Hydra-Sport boat, a 1975 model 150 h.p. Mercury outboard motor, a Shakespeare trolling motor, a 1975 Easy Trail boat trailer, a depth finder, batteries, fishing rods and tackle, was stolen from the Greenfield Marine and Tackle Company at Greenfield, Missouri. The value of the rig at the time of the theft was approximately $6,000.

Detective Whitlow of the Greene County Sheriff's Office and Missouri State Water Patrolman Swineburg were investigating this theft[2] and in December 1975 Detective Whitlow obtained information that a stolen bass boat rig had been parked behind Lacey's Garage at Republic, Missouri. The two officers went to Republic on the morning of December 10, 1975, to investigate. Fred Lacey told the officers that when he came to work one morning in early October he had found the boat sitting behind his garage. The boat was covered with a boat cover Lacey recognized as belonging to Bob Rantz. Later that day, Lacey received a telephone call from Rantz's wife. Mrs. Rantz told him that Ronald Bass had stolen the rig and that Lacey should not worry about it because it would be gone sometime that day. Lacey said the rig was thereafter picked up by a man named Tom Hayes of Springfield.

The officers drove to Springfield to defendant's place of business, Hayes Vending Service. Detective Whitlow told defendant his name, that he was a detective with the sheriff's department, and displayed his badge and official identification. Whitlow then introduced Patrolman Swineburg and as this officer started to show his identification, defendant said: "That's okay, I know this boy here. He's stopped me on the water before."

In defendant's private office, Detective Whitlow told defendant they had information he had picked up "this boat" at Lacey's; that the officers wanted to look at the boat because a boat of that description

---

1. During the hearing on defendant's motion for severance, the state unsuccessfully sought to consolidate a separate case of receiving stolen property which was then pending against the defendant. That case involved another Ranger bass boat, a 1975 model, a 85 h.p. Evinrude motor, and a boat trailer. The state argued it could show a common scheme or plan in defendant's purchase of the three stolen boats.

2. During the course of the suppression hearing the officers related approximately 50 boats had been stolen by a boat theft ring operating in the area and headed by Bob Rantz. See: *State v. Charity*, 587 S.W.2d 350 (Mo.App.1979).

had been stolen in Dade County. Defendant told the officers the following: "A man had come into his place of business wanting to trade him this boat, motor and trailer in on a pool table. That he wasn't interested in a trade so that man approached him in purchasing the boat, and trailer, motor, that he did go down to Republic to Fred Lacey's Garage and pick these items up and towed them to his place of business in Springfield to have one of his employees look at it for him, stating that he did not know anything about boats. . . . He said that he had seen him on two occasions, but did not know his name or would not know him again if he saw him. . . . [and] the boat was there [at his place] for about two days and that the man returned and picked the boat up and took it away without his knowledge."

Detective Whitlow thanked defendant for his time and as they were leaving, Whitlow told him that "if he had knowledge of where this boat was and me advising him that it was a stolen boat at that time, that he should tell us, that he could be arrested if he had knowledge and refused to let us know."

The two officers had been gone about an hour when they were notified defendant wanted them to return to his place of business to talk to them. When they arrived, defendant told them he had the boat and would show it to them. He said that about two days after he had picked up the rig at Republic, a woman he did not know appeared at his office to collect for the boat and he had his wife pay the woman $3,200 in cash but no receipt was taken.

Defendant accompanied the officers to his farm where the rig was stored in a barn. The manufacturer's serial number on the transom of the fiber glass boat, impressed into the boat when it was constructed, had

been obliterated by cutting and gouging and a counterfeit metal tag, with purported serial numbers stamped thereon, had been placed over the area where the original number had been. Efforts had also been made to destroy the serial numbers on the outboard motor. A metal piece affixed to the outside of the motor had been ground or filed in such a fashion as to eliminate the original numbers and counterfeit numbers stamped thereon. A small metal plate with counterfeit numbers had been riveted on the outside of the motor. Manufacturer's numbers stamped into the block of the motor had been chiseled or cut out. A metal plate attached to the trailer and bearing identification numbers had been removed from the trailer. The depth finder which had been in the boat when it was stolen was still in the boat, but defendant told the officers it belonged to him.

Defendant produced an application for Missouri titles for the boat and motor which he had signed as owner. The application form was typed. Original titles in the name of "H & H Investment Company" were sought for the boat and motor, the form showing they were "never registered". In the space for Dealer Certification was typed "Mike Withers" of "Clinton, Kansas" but was not signed by "Mike Withers", nor notarized. Beneath this was typed: "This boat and motor came from out of state and has never been registered."[3] The application form described both the boat and outboard motor as being used 1974 models. The manufacturer's number for the boat followed the counterfeit number affixed to the transom, except for the omission of one number in the bogus series. The manufacturer's number for the motor showed the counterfeit numbers on the metal plate on the outside of the motor.[4]

**3.** Missouri requires registration of motorboats [§ 306.030, RSMo 1978] and outboard motors [§ 301.450, RSMo 1978] and issues titles therefor. According to the officers, Kansas and Illinois were non-title states as to boats and motors in 1975. Certificates of title for boat trailers are required in Missouri [§ 301.067] and Kansas [K.S.A. 8–126 et seq., 1975]. The officers said applications for Missouri titles for the

boats and motors stolen by the rings followed a pattern of listing a Kansas or Illinois seller and stating they had not been previously registered.

**4.** At trial, the officers said defendant also produced a piece of paper 4½″ × 5½″ which was received as state's exhibit 12. On the paper was typed:
"Recv. of

Defendant told the officers he had another boat, a Ranger, which he had purchased at Carl's Marine in Springfield. With defendant's permission, the Hydra-Sport boat rig was taken by the officers to the police laboratory in Springfield for examination for the true serial numbers. On January 14, 1976, Detective Whitlow received an informer's tip that a man from whom a stolen boat had been recovered had another stolen boat. A check was made with Carl's Marine to determine if defendant had purchased a Ranger boat there. The officer was told defendant had not. Through title applications on file with the Missouri Department of Revenue the officer learned defendant had received a Ranger boat and the application recited the seller was from Illinois, a non-title state. The same notary public had notarized the title application for the Ranger boat that notarized state's exhibit 12. The Ranger boat was located at defendant's lake property and the serial numbers on the boat and motor had been altered in the same fashion as those on the Hydra-Sport and Mercury motor. Defendant was then arrested.

The trial court correctly overruled defendant's motion to suppress his statements and the evidence which resulted from his statements was properly received at trial. Defendant's contention that he had become the "focus" of the officers' investigation lacks factual support and is irrelevant. The United States Supreme Court ruled in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), that the warnings required by *Miranda* applied to custodial interrogations. The Court said: "*Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" 425 U.S. at 347, 96 S.Ct. at 1616. In *Oregon v. Mathiason*, 429 U.S.

492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the Court made it clear that *Miranda's* "custodial interrogation" means that an individual must either be physically taken into custody or physically deprived of his freedom of action in a significant way before the warnings required by *Miranda* are triggered. "Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or *because the questioned person is one whom the police suspect. Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody'." 429 U.S. at 495, 97 S.Ct. at 714. (Emphasis added).

Here, the officers' investigation of the stolen boat led them to Lacey's Garage and then to the defendant. Defendant was not a suspect but thought by the officers to be an innocent victim of criminal activity. The first interview of defendant took place in his private office, as did the second one. Defendant was not physically taken into custody and he was not physically deprived of his freedom of action. Clearly, the statements by defendant were made in non-custodial circumstances and *Miranda* warnings were not required. See: *State v. Overstreet*, 551 S.W.2d 621 (Mo. banc 1977); *State v. Lewis*, 579 S.W.2d 744 (Mo.App. 1979); *State v. Pierce*, 556 S.W.2d 216 (Mo. App.1977); *State v. Love*, 546 S.W.2d 441 (Mo.App.1976). Defendant's point is denied.

## SUFFICIENCY OF EVIDENCE

As noted, supra, defendant questions the sufficiency of the evidence to support the jury's verdict. Defendant claims his motions for judgment of acquittal at the close of the state's case and the close of all of the evidence should have been sustained by the trial court.

---

1974 150 hp Mercury motor Ser. # 3502808
1974 17ft Hydro Sport Boat Ser. # HSX7011M74HL
Custom Built two wheel trailer."
A signature of "Mike Withers" appeared beneath the description of the articles. This was

followed by a purported notorization by a Greene County Notary Public on October 10, 1975. The serial numbers listed were the same as appearing on the application for titles.

Defendant's assignment requires that we consider the facts in evidence and all favorable inferences reasonably drawn therefrom in the light most favorable to the state, casting aside contrary evidence and inferences. *State v. Longmeyer*, 566 S.W.2d 496 (Mo.App.1978). And, where, as here, evidence was offered on behalf of defendant, defendant waived any claim of error as to his motion for judgment of acquittal filed at the close of the state's case. *State v. Marshall*, 571 S.W.2d 768 (Mo.App.1978). Thus, the submissibility of the case here is to be determined upon *all* of the evidence and inferences supporting the verdict. *State v. Sykes*, 372 S.W.2d 24 (Mo. 1963).

Detective Whitlow and Patrolman Swineburg testified at trial. Their testimony closely paralleled the testimony they gave at the suppression hearing,[5] supra, but with the following additions: Whitlow said that on their first visit to defendant's office, defendant told them that if he knew where the boat was he would tell them; that defendant said he prepared the "bill of sale", state's exhibit 12, after he received the boat in order to license it and that he prepared the application for titles; that on the officers' second visit, defendant said he did not know where the unknown seller was from; and, that defendant told them he had directed his wife to pay the unknown woman for the rig. The detective also testified he had been unsuccessful in attempting to subpoena the person shown as the notary on exhibit 12 and had been advised she was in Florida. The officer also stated he had been unable to locate a "Mike Withers" in Clinton, Kansas. Patrolman Swineburg said the defendant told them he did not know much about boats and motors; that in the first interview defendant said he had put the rig inside a compound next to his place of business after he brought it from Republic and that he "didn't want it" and "didn't have it." This officer also testified that when he and Detective Whitlow returned to defendant's farm to remove the

boat, after they had brought defendant back to his business and obtained a county vehicle which had a trailer hitch, Mrs. Hayes, defendant's wife, said she was the one that had bought the boat and that when the unknown woman came to collect for it she, Mrs. Hayes, prepared a draft and sent one of her employees to a nearby bank to cash the draft and obtain the $3,200 she gave the woman.

Fred Lacey and Carol Thompson, an employee of Lacey's Garage, testified on behalf of the state, with Thompson identifying defendant as the person who picked up the boat at Lacey's Garage in Republic. Photographs of the alterations made to the manufacturer's serial numbers on the boat and motor were admitted and testimony received from the state's expert who had examined the alterations. The altered metal plate from the motor, and the counterfeit metal plate purporting to be the boat's serial number were received in evidence, as were the application for titles and the "bill of sale." Owners of the boat, motor and trailer identified them as being those stolen the night of May 30, 1975.

Defendant did not testify but Mrs. Hayes was the principal witness for the defense and testified at length. Among other things, Mrs. Hayes testified she did not prepare and cash a draft; that she and her husband were the "H & H Investment Company" shown on the application for titles; that the man who sold the boat identified himself to her as "Mike Withers" of Clinton, Kansas, and defendant was present at the time; that she and her husband had owned many boats (in the past), had bought and sold boats, and he knew a lot about boats and motors. She said that after defendant picked up the boat the two of them took it to the lake that weekend to try it out and then put it back in the fenced compound at their place of business. Mrs. Hayes said that when the woman came to collect for the boat she did not request any identification or receipt but did receive a "bill of sale", exhibit 12.

---

5. By reason of a pre-trial ruling by the court the state did not offer evidence concerning the Ranger boat which defendant said he pur-

chased at Carl's Marine and which was at defendant's lake property.

Defendant contends that because the evidence failed to show he received *recently* stolen property and did not show a "grossly inadequate price" was paid for the rig, and the evidence failed to show "a suspicious manner of conducting a transaction," his motions for judgment of acquittal should have been granted.

■ The necessary elements of the offense of receiving stolen property are as follows: (a) the property must be received in some way from another person; (b) the property at the time of reception must be stolen property; (c) the receiver, at the time of the reception, must have guilty knowledge that it is stolen property; and, (d) the accused must have received the property with a fraudulent or criminal intent. *State v. Inman,* 578 S.W.2d 336 (Mo. App.1979).

■ The rule is clear in this state that, while an unexplained possession of recently stolen property can give rise to an inference that the possessor is the thief [*State v. Dobson,* 303 S.W.2d 650 (Mo.1957)], an inference cannot be drawn that the possessor of stolen goods received the property from another [*State v. Armstrong,* 555 S.W.2d 640 (Mo.App.1977)] in a prosecution under § 560.270, RSMo 1969. "[T]he unexplained possession of property recently stolen does not give rise to the inference that the possessor is guilty of the offense of receiving stolen property from another under § 560.-270, RSMo 1969. *State v. Magers,* 452 S.W.2d 198, 200 (Mo.1970)." *State v. Johnson,* 580 S.W.2d 254, 259 (Mo. banc 1979).

■ Missouri decisions have held that the guilty knowledge, required in a case of receiving stolen property, requires knowledge on the part of the accused of the stolen character of the goods at the time he receives them. "This means actual knowledge must be proved and found, not mere negligence in failing to know, not what a reasonably prudent man might know or believe, not facts which would put a reasonably prudent man on guard, although of course the knowledge which defendant possessed may be shown by circumstances." *State v. Taylor,* 422 S.W.2d 633, 636 (Mo. 1968). However, as stated in *State v. Simone,* 416 S.W.2d 96 (Mo.1967): "It is the unusual situation when there is direct evidence of the intent of a person charged with a crime, and the requisite intent may and generally must be established by circumstantial evidence. [Citations omitted]. Also, 'It is often difficult to make direct and positive proof of the accused's knowledge the goods were stolen, and this element may be inferred from certain facts and circumstances.' *State v. Hicklin,* 358 Mo. 1016, 218 S.W.2d 564, 565; *State v. Ciarelli,* Mo.App., 366 S.W.2d 63, 67." 416 S.W.2d at 101.[6] Thus, suspicious conduct, deceptive behavior, and false statements to officers can give rise to an inference of guilty knowledge by a defendant. *State v. Davis,* 590 S.W.2d 418 (Mo.App.1979); *State v. Eggleston,* 27 S.W.2d 726 (Mo.App.1930). Likewise, the necessary element of fraudulent or criminal intent can be inferred from facts and circumstances. *State v. Brown,* 332 S.W.2d 904 (Mo.1960); *State v. Wood,* 553 S.W.2d 333 (Mo.App.1977); *State v. Ciarelli,* supra.

■ Considering the evidence and such reasonable inferences as the evidence will support, it is clear that there was sufficient evidence to sustain a finding by the jury

**6.** The general rule is stated in 76 C.J.S. Receiving Stolen Goods § 19 (1952) as follows: "The courts are agreed that a finding of guilty knowledge and a conviction will be warranted where evidence of such possession is supplemented by other criminatory evidence or suspicious circumstances, *such as false, evasive,* or contradictory statements by accused as to his possession of the property, the nature and character of the property as passing readily from hand to hand, the unusual manner of acquisition of the property, the refusal of accused to give his name when arrested, his use of an assumed name in selling the property, the concealment or attempts at concealment of the property, its alteration to prevent identification, the payment of an inadequate price for the property, the sale or attempt to sell the property at a price much smaller than its value, the possession of other stolen property, other conduct and declarations of accused inconsistent with his claim of innocence, or the evil reputation of the person from whom accused purchased the property."

that defendant knew or believed the Hydra-Sport rig was stolen property at the time he took possession of it with the requisite criminal intent. *State v. Ciarelli*, supra; *State v. Wood*, supra. The jury could properly consider the following: the defendant's false, evasive and contradictory statements to the officers as to his possession of the stolen rig; the fact that defendant, a businessman, was no stranger to the matter of buying and selling boats and motors and his resultant awareness of the necessity for proper legal documentation in obtaining titles; the kind and quantity of property offered and its location before and after defendant's possession; the purchase of such property from an unknown person and payment thereafter to an unknown woman, in cash, without obtaining a receipt therefor; and, the patently obvious alterations of the serial numbers of the boat and motor and absence of the manufacturer's identification on the custom built trailer.[7] Defendant's point is denied.

## INSTRUCTIONS

Defendant's remaining points are directed to two instructions given by the court and his requested instruction which the court did not give.

■ The state's verdict director combined MAI–CR 7.78 and MAI–CR 2.12 and read as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 10, 1975, in the County of Greene, State of Missouri, the defendant or Inez Hayes bought and received a 17 foot Hydra-Sport boat, serial no. HSX01714M75M–L, a 1975 Mercury Outboard Motor, a 1975 East Trail boat trailer, and a Shakespeare 12–24 trolling motor, and

Second, that the property was of the combined value of at least fifty dollars, and

Third, that the property had been stolen from another, and

Fourth, that at the time the defendant or Inez Hayes bought and received said property, the defendant knew that the property had been stolen, and

Fifth, that the defendant or Inez Hayes bought and received such property with the intent to defraud another of his lawful interest therein, and

Sixth, that the defendant acted either along [sic] or knowingly and with common purpose together with Inez Hayes in the conduct referred to in the above paragraphs, then you will find the defendant guilty of buying and receiving stolen property.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of buying and receiving stolen property you will fix his punishment:

1. By imprisonment by the Department of Corrections for a term fixed by you, but not less than two years nor more than ten years, or

2. By confinement in the county jail for a term fixed by you, but not to exceed one year, or

3. By a fine fixed by you, but not to exceed $1,000, or

4. By both such fine and confinement in the county jail."

Defendant asserts that there was no "competent evidence" to support the giving of an instruction that defendant had acted with another. On the contrary, defendant told the officers he directed his wife to pay for the rig and she testified she offered and paid for the boat and was involved in the

---

7. The bogus tag on the transom of the boat did not completely cover the damaged area where the original numbers had been. The numbers on this tag were unevenly spaced and not in a straight line. The tag was obviously not a factory made tag. The metal plate on the front of the motor, which bore counterfeit numbers, originally black in color with raised aluminum wording and serial numbers, had been visibly ground or scraped down to the base metal over an area approximately 1¾" × ½" and unevenly spaced and misaligned numbers had been stamped thereon.

negotiations to buy the boat. "Notes on Use" under MAI–CR 2.10 state that: "MAI–CR 2.10 together with *either* MAI–CR 2.12 or 2.14 should be used where it is not clear from the evidence whether defendant acted alone or with another or others." We find no error.

Defendant next claims the court erred in giving MAI–CR 2.10 [Parties: General Responsibility for the Conduct of Others] because of lack of evidence that he had acted with another with the common purpose of committing an offense. As noted in the preceding paragraph, there was evidence to support this submission and we find no error.

Defendant's final complaint of instructional error concerns the court's refusing to give his proposed converse instruction which omitted any reference to the defendant acting in concert with his wife. Under the verdict director, defendant could have been convicted either if he acted alone or in concert with his wife. Because the latter alternative was omitted from his proposed converse, the trial court correctly refused to submit it to the jury and gave a converse which covered the alternatives in the verdict director. *State v. Hicks,* 353 Mo. 950, 185 S.W.2d 650 (1945); *State v. Currie,* 490 S.W.2d 295 (Mo.App. 1973). The point is denied.

The judgment is affirmed.

HOGAN and MAUS, JJ., concur.