**STATE of Missouri, Respondent,**

v.

**Ted KELLY, Appellant.**

**No. 49613.**

Supreme Court of Missouri,

Division No. 2.

March 11, 1963.

R. J. Southall, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was charged with stealing property of over the value of $50, §§ 560.156, 560.161, RSMo 1959, V.A.M.S.,[1] and upon trial he was found guilty by a jury. Upon a hearing apart from the jury the court found, in accordance with the allegations of the amended information, that he had been previously convicted, sentenced and imprisoned for a like offense and fixed his punishment at ten years in the penitentiary. After an adverse ruling on a motion for new trial defendant was permitted to appeal as a poor person. No brief has been filed here on his behalf, so we consider the assignments of his motion for a new trial, and those matters which we examine independently under Rule 28.02, V.A.M.R.

The jury was justified in finding the following facts from the evidence adduced by the State. On February 18, 1962, Richard E. Clinton was an account executive for the Outdoor Advertising Company in Kansas City. At the time of trial he was President of Midland Advertising Company. On that day, Sunday, he drove to 3116 Truman Road in Kansas City at about 11:00 a. m. and parked his car in front of that place; the lot and building there were leased to Midland Advertising Company, and he went there to make an inspection. More specifically, he was in a fenced-in yard, and was checking a pole; he estimated that his car was about 16 feet away. He heard a car door slam, looked up, and saw a man walking away from his car; he also noted that the car door was not fully closed. He called out, asking the man "what he had taken from the car," but the man mumbled something and walked on; Mr. Clinton ran back to the building where he could get through the fence, and stopped the man at the corner, about half a block from the car. Some conversation ensued,— essentially as follows: Clinton told the man that he wanted back, right then, whatever he had taken from the car; the man first denied that he had taken anything, but upon Clinton's insistence that he "meant business," the man pulled out Clinton's Polaroid camera, which had been lying under the car seat, and handed it over; Clinton asked what else he had taken and the man said nothing. At a suggestion of Clinton that he would search the man, the latter stated, in substance, "If you touch me, I will kill you." During the conversation the man had been standing with his right hand in his pocket and "with something in the pocket," which Clinton thought "possibly was a gun." Becoming somewhat fearful, he did not pursue the idea of a search. The man's final remark was: "Look, you got your camera back; there was nothing else taken out of the car; there was nothing else worth taking. Why don't you go your way and I will go mine." With that, he turned and walked off. This man wore a gabardine coat and a brown hat;

---

1. All statutory citations will be to that revision.

the camera handed over to Clinton by this man was Clinton's own camera. Clinton immediately went into the office on the premises and called the police. Two officers came promptly and he reported the incident to them, with a description of the man.

Within a short time the police returned with the defendant. Mr. Clinton identified the defendant positively at that time, also later in a showup at the police station, and very positively at the trial. He told the officers when Clinton was brought back to him that "most certainly this is the man." He had noticed a peculiar appearance about defendant's teeth or gums, which later proved to be due to the use of chewing tobacco or snuff. Clinton had, of course, had an opportunity to observe the defendant in face-to-face conversation in broad daylight.

The officers, cruising the neighborhood after the report, saw a man walking at a point several blocks from the scene of the theft, who appeared to answer the description given them; they stopped him, questioned him, and took him back, with the results already indicated. Mr. Clinton testified that the camera cost him $150 two or three years previously; that it was worth at least $75 at the time in question. He showed considerable knowledge on this subject, having worked temporarily in a store which sold cameras, and having had access to a "blue book" fixing the values of used cameras. The State, without objection, proved one prior conviction for stealing property of over the value of $50, a sentence of seven years therefor, confinement in the penitentiary, and commutation after about four years. The trial court found these latter facts.

Defendant testified in his own behalf, essentially as follows: that when arrested he was walking downtown "to fix a refrigerator for a woman"; that he never saw Mr. Clinton until the arresting officers took him back to confront Clinton; that he did not go into or break into Clinton's car and "take a Polaroid camera." He ad-

mitted nine convictions for burglary, attempted burglary, larceny and stealing over a period of years from 1934 to 1956 or 1957, in Oklahoma, Kansas and Missouri. He testified also, without objection, that he had possibly been arrested as many as 38 times, but he complained that the police, in the majority of instances, had merely been harassing him.

In the motion for new trial complaint is made first of the supposed lack of competent and substantial evidence to show the value of the camera. The owner testified here that the camera was worth at least $75 at the time of the theft and that it cost $150 two or three years previously. Testimony by an owner as to the reasonable value of his property is usually deemed to be competent and substantial evidence. State v. Brewer, Mo., 286 S.W.2d 782, 783; State v. Brewer, Mo., 338 S.W.2d 863, 868. The weight of such evidence is for the jury. See also State v. Johnson, Mo., 293 S.W.2d 907, 910. Here there was no objection that any improper standard of value was being used, and the testimony was reinforced on cross-examination by a showing that Mr. Clinton had worked temporarily in a store selling cameras and that he had had access, at least, to a book showing the values of used cameras. Under these circumstances his testimony constituted substantial evidence of reasonable value, and there was no evidence to the contrary. The assignments now made that this testimony constituted hearsay, that it was opinion evidence only, and that the camera was not produced or shown to be operative, are without substance. Clinton did not pretend to quote the "blue book" price, but actually gave his own appraisal of the value, as owner. The assignments are denied.

The next assignment may, with some leniency, be taken as a contention that the evidence was insufficient to show a "*taking*" of the property. We need not recite all the evidence again on this contention. The camera was in Clinton's car,—

about 16 feet from him; he heard the door slam and saw defendant walking away from the car; upon immediate confrontation, defendant handed over that specific camera, which he had been holding concealed in or under his clothing. Shortly thereafter defendant said to Clinton: "Look, you got your camera back * * * there was nothing else taken out of the car * *." Whether this be circumstantial or direct evidence, or both, it constituted evidence of a most convincing and substantial type that defendant then and there took the camera from the car. We cannot ignore the reasonable and necessary inferences arising from demonstrated facts. The inference here that defendant took and appropriated the camera from Clinton's car within the definition and meaning of § 560.156, and in a manner inconsistent with the rights of the owner, is simply inescapable. The only substantial issue here was that of identification. Defendant testified that he was not the man; Clinton testified most positively that he was. On this purely factual issue, the jury believed Mr. Clinton and that issue was foreclosed. We consider here the evidence favorable to the State and that evidence fully supported the finding and verdict. State v. Hutchin, Mo., 353 S.W.2d 701.

■ Another assignment is that the court erred in failing to instruct the jury on the "lesser included offense of possession of stolen property." We assume that counsel intended a reference to the offense of *"receiving"* stolen property. Section 560.270. That offense is definitely *not* a lesser offense included within the offense of stealing. It involves different elements,—a buying or receiving, *from another,* of property known to *have been stolen,* with intent to defraud. Indeed that offense may well be said to be wholly inconsistent with the offense of stealing. In receiving stolen property a *prior* theft and knowledge thereof are essential. State v. Day, 339 Mo. 74, 95 S.W.2d 1183, 1185. Here, the only stealing involved was charged to have been done by the defendant himself. Neither the evidence nor the information justified any such instruction; this defendant was guilty of personally stealing the camera, or he was not guilty. Any theory of receiving stolen property here would have been at war with all the evidence, the State's as well as defendant's. Where there is no evidence to support such an instruction it should not be given. State v. Hands, Mo., 260 S.W.2d 14, 21–22; and see, generally, State v. Johnson, 326 Mo. 1030, 33 S.W.2d 912; State v. Richardson, Mo., 343 S.W.2d 51, 55.

■ A further assignment asserts error in permitting the information to be amended on the morning of trial without granting a continuance. The only amendment thus made was the inclusion of the prior conviction, sentence and confinement. Actually the amended information was filed on the day before trial. There is no merit in this point for several reasons: (1) defendant was represented by counsel and no request was made for a continuance; (2) in view of defendant's admission of this and eight other convictions it would be unreasonable to suppose that a continuance would have afforded him any defense against the charge as thus made; (3) the trial court would have been fully justified in refusing a continuance, had one been requested, since the substantive offense was not changed, and no substantial rights of defendant are shown to have been prejudiced. State v. Ninemires, Mo., 306 S.W. 2d 527; S.Ct. Rule 24.02; State v. Hutchin, Mo., 353 S.W.2d 701; State v. Withers, Mo., 347 S.W.2d 146. Indeed the granting or denial of a continuance in a criminal case, if requested, is a matter addressed to the sound discretion of the trial court. State v. LeBeau, Mo., 306 S.W.2d 482, 486.

■ The last assignment of the motion is that "defendant was denied his constitutional right to participate in the selection of the jury members, said selection having been made by his court-appointed attorney without consultation with the defendant." There is absolutely nothing

in the record to sustain that assignment. The defendant was present in person. His attorney is presumed to have properly represented him. The contention certainly is not self-proving and, as made, it is substantially meaningless.

Defendant asks, in the alternative, that if he is not granted a new trial, his sentence be reduced because it is the maximum permitted under the statute, and because it is excessive under the circumstances. The assessment of punishment is primarily, and we might say almost exclusively, the function of the trial court or the jury, as the circumstances may require. A discussion of the power and function of the appellate court in such instances appears in the case of State v. Laster, Banc, 365 Mo. 1076, 293 S.W.2d 300, 304–305. No such circumstances appear here as would justify our interference.

We have examined those matters required under our Rule 28.02 and find no prejudicial error. The judgment is affirmed.

All of the Judges concur.