**STATE of Missouri, Plaintiff-Respondent,**

v.

**Samuel William ARMSTRONG, Defendant-Appellant.**

**No. 37556.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

June 21, 1977.

As Modified On Court's Own Motion
July 21, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Robert A. Hampe, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., George A. Peach, Circuit Atty., Julian D. Cosentino, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

Samuel William Armstrong, charged with four counts of receiving stolen property, § 560.270, RSMo 1969, and convicted on three counts, was given three 2-year sentences. He appeals from the judgment of conviction, contending that the State failed to prove that he "received" the stolen goods and that he had knowledge that the goods were stolen.

Appellant and his business partner Michael Primus operated a boutique shop at 4960 Delmar Boulevard and a restaurant at 4924 Delmar Boulevard in the City of St. Louis. Appellant rented the buildings housing the shop and restaurant from Chris Smyrniotis. Later appellant rented a garage building at the rear of 4960 Delmar, for the declared purpose of storing some personal goods (furniture, pictures, clothing, incense, etc.) and some "back-up" merchandise for the store.

On May 6, 1974 city police officers were patrolling the area in the course of a routine investigation. As they drove through the alley in the rear of 4960 Delmar appellant and Primus were observed standing outside the rear of the garage at a bay door, in the process of turning from the door. Appellant was withdrawing the key from a lock or, from the motion of his hand coming down from the door with a key, appeared to be withdrawing the key from a lock. The officers stopped their van, dismounted, and approached appellant and Primus. On being confronted by the officers one of the men dropped a bag. Officer Monroe picked up and inspected the bag, which apparently contained marijuana. The men were arrested for violation of the Missouri controlled substance law by possession of marijuana. Two of the officers observed and smelled smoke coming from underneath the garage door. Officer Monroe took the key from appellant's hand and, using the key, entered the garage through the bay door to investigate the cause of the smoke. The smoke was found to be coming from a smoldering acetylene torch, which was warm. Inside the garage officers observed a number of automobiles in various stages of being disassembled or "stripped." Four of them were body shells only. All had parts missing. There were automobile tools, automobile parts, wheels, drive shafts, rear ends, radiator assemblies, and accessories strewn about. Other parts of unidentified automobiles indicated that other automobiles had been completely dismantled in the garage. Appellant and Primus told the

officers they knew nothing about the automobiles. The officers searched for but did not find any person or persons on the premises. Officers from the auto theft section of the police department were called. By number they identified ten automobiles in the garage and ascertained the names of the registered owners. The papers on an eleventh automobile were found. Further investigation revealed that theft reports had been made on all eleven vehicles. The owners of three of the automobiles were called to the garage. Each positively identified one of the cars as his property and testified that his car had been stolen. Two of them were stolen on April 2 and the third was stolen on April 16, 1974.

Appellant testified at the trial as follows: He was caretaker of the garage building during the summer of 1973. He rented the garage in November, 1973. There was a fire in the garage that summer. Appellant called the fire department. He told a police officer who answered the fire alarm that he managed the property and had rented it to one Richard Smith. On page 218 of the transcript appellant, testifying to events in 1973, stated that he was not aware that the garage had been used to strip stolen cars or for the purpose of keeping stolen cars. On page 219 he testified that the police came to the garage and found a number of stolen cars inside. After renting the garage in November, 1973 appellant stored therein some of his furniture and personal effects and some goods belonging to his shop. He rented the garage to one Richard Miller March 1, 1974. Miller was given a key. A second key was kept inside the store. From March 1, 1974 to May 6, the date of arrest, appellant had no reason to enter the garage and did not do so. When police found him and Primus in the alley they had not been in the garage; they were in the alley cleaning up trash and debris in response to a notice from the city. He had no knowledge of the automobiles found in the garage; had never seen them; had never been inside or looked inside the garage. He did not enter the garage between November, 1973 and May 6, 1974. He did not remember Richard Miller's address. Miller paid him $125 a month rent from March, 1974 through June, and he gave Miller receipts. Appellant's testimony was uncorroborated. Neither Primus, Smith nor Miller testified.

Section 560.270, RSMo 1969 provides: "Every person who shall * * * in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, * * *."

Appellant contends that the State failed to prove (1) that appellant "received" the automobiles and (2) that he received them with knowledge that they were stolen.

■ The essential elements of the offense of receiving stolen property are (1) the property must be "received in some way" from another person; (2) the property at the time of reception must be stolen property; (3) the receiver, at the time of reception, must have guilty knowledge that it is stolen property, and (4) the accused must have received the property with a fraudulent or criminal intent. *State v. Kelly,* 365 S.W.2d 602[7] (Mo.1963).

■ It is an essential element of reception that there be at least two actors involved, 66 Am.Jur.2d, Receiving Stolen Property § 4 p. 298; that accused received the property from another—from some person other than the owner. 76 C.J.S. Receiving Stolen Goods § 5 b. p. 8. "Proof of receipt of the property involved is necessary to establish that the offense of receiving stolen property has been committed. Such proof is necessary in order to differentiate between the actual thief and the receiver." *State v. Magers,* 452 S.W.2d 198, 200 (Mo. 1970). The property must have been stolen by someone other than the person accused of receiving stolen goods. 76 C.J.S. Receiving Stolen Goods § 1 p. 2; § 2 p. 4. As stated in 66 Am.Jur.2d, Receiving Stolen Property § 4 p. 298. "* * * [T]he reception necessary to this offense cannot be embraced in the caption and asportation by the thief, but must rest on a subsequent *delivery to some other person* having knowledge that the property is stolen." (Our emphasis.)

There was evidence that accused was in possession of the stolen automobiles, but proof of possession of recently stolen property alone does not establish reception from another. This is true notwithstanding language in *State v. Ciarelli,* 366 S.W.2d 63, 67[3] (Mo.App.1963), and *State v. Reo,* 510 S.W.2d 211, 213[3] (Mo.App.1974), equating "receive" with taking possession. That language must be read in the light of the evidence in those cases, which discloses an intermediary between true owner and accused. In proving that an accused received stolen goods by taking possession of them the State must show that accused came into their possession by receipt in some way from another person. 76 C.J.S. Receiving Stolen Goods § 19 p. 43; 66 Am.Jur.2d, Receiving Stolen Property § 6, p. 298.

As was the case in *State v. Magers,* supra, it cannot be said from the evidence in this record that appellant was the receiver rather than the taker of the stolen automobiles. The evidence may have made a case of stealing against appellant, but only by resorting to speculation and conjecture may it be said that appellant received stolen property *from another.* There is nothing to show how appellant came into possession of the automobiles; no evidence that appellant obtained them from or through a thief; no evidence that appellant purchased, leased, borrowed or otherwise acquired them from another person. The situation is akin to that in *State v. Miller,* 433 S.W.2d 281 (Mo.1968), wherein the court said, l.c. 283: "The evidence is more consistent with guilt of the charge of stealing than with guilt of the charge of receiving stolen property from another."

For failure to prove the first element of the offense, reception, the judgment must be reversed.

"Absent evidence of appellant's receipt of the property, we need give no consideration to the proof on this record of his knowledge that the automobile was stolen. * * * Nothing could be resolved by passing upon the evidence presented on this issue at the trial now under review." *State v. Magers,* supra, 452 S.W.2d l.c. 200.

Judgment reversed.

All the Judges concur.