STATE of Missouri,
Plaintiff-Respondent,

v.

Wyatt DAVIS, Defendant-Appellant.

No. 11150.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 20, 1979.

John D. Ashcroft, Atty. Gen., Teresa Aloi Angle, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Briney, Welborn, Briney, Welborn & Spain, P. C., Bloomfield, for defendant-appellant.

BILLINGS, Presiding Judge.

Defendant Wyatt Davis was convicted by a Butler County jury of receiving stolen

property [§ 560.270, RSMo 1969] and his punishment fixed at 60 days in jail and a fine of $1,000. He contends the evidence failed to establish his knowledge that the property was stolen when he received the same and therefore the evidence is insufficient to support the jury's verdict. We affirm.

The necessary elements of the offense of receiving stolen property are as follows: (a) the property must be received in some way from another person; (b) the property at the time of reception must be stolen property; (c) the receiver, at the time of the reception, must have guilty knowledge that it is stolen property; and, (d) the accused must have received the property with a fraudulent or criminal intent. *State v. Inman,* 578 S.W.2d 336 (Mo. App.1979). Defendant avers element (c) finds no support in the evidence and argues that his possession of the stolen goods cannot supply the element of guilty knowledge.

The rule is clear in this state that, while an unexplained possession of recently stolen property can give rise to an inference that the possessor is the thief [*State v. Dobson,* 303 S.W.2d 650 (Mo.1957)], an inference cannot be drawn that the possessor of stolen goods received the property from another [*State v. Armstrong,* 555 S.W.2d 640 (Mo.App.1977)] in a prosecution under § 560.270, RSMo 1969. "[T]he unexplained possession of property recently stolen does not give rise to the inference that the possessor is guilty of the offense of receiving stolen property from another under § 560.-270, RSMo 1969. *State v. Magers,* 452 S.W.2d 198, 200 (Mo.1970)." *State v. Johnson,* 580 S.W.2d 254, 259 (Mo. banc 1979).

Missouri decisions have held that the guilty knowledge, required in a case of receiving stolen property, requires knowledge on the part of the accused of the stolen character of the goods at the time he receives them. "This means actual knowledge must be proved and found, not mere negligence in failing to know, not what a reasonably prudent man might know or believe, not facts which would put a reason-ably prudent man on guard, although of course the knowledge which defendant possessed may be shown by circumstances." *State v. Taylor,* 422 S.W.2d 633, 636 (Mo. 1968). However, as stated in *State v. Simone,* 416 S.W.2d 96 (Mo.1967): "It is the unusual situation when there is direct evidence of the intent of a person charged with a crime, and the requisite intent may and generally must be established by circumstantial evidence. [Citations omitted]. Also, 'It is often difficult to make direct and positive proof of the accused's knowledge the goods were stolen, and this element may be inferred from certain facts and circumstances.' *State v. Hicklin,* 358 Mo. 1016, 218 S.W.2d 564, 565; *State v. Ciarelli,* Mo.App., 366 S.W.2d 63, 67." 416 S.W.2d at 101. Thus, suspicious conduct, deceptive behavior, and false statements to officers can give rise to an inference of guilty knowledge by a defendant. *State v. Eggleston,* 27 S.W.2d 726 (Mo.App.1930).

With the foregoing principles to guide us, we recast the evidence and all favorable inferences reasonably to be drawn therefrom in the light most favorable to the state, disregarding contrary evidence and inferences. *State v. Webb,* 544 S.W.2d 53 (Mo.App.1976).

Mingo Job Corps Center is a United States Vocational and Educational facility, near Puxico, Missouri, that trains young men in various skills. Defendant had been employed at the Center as a resident advisor and night watchman at least since September 1975. In his capacity as night watchman his duties included the caring for and the safekeeping of government property. Many items used at Mingo were obtained through the General Services Administration (GSA) and bore GSA numbers.

In February 1977 the Director of Mingo Job Corps Center, John Young, saw a post in the defendant's yard which he recognized as one of a number of posts that had been specially treated and purchased for a camp project. Mr. Young notified county police officers and accompanied them to defendant's house to question defendant about the post in defendant's yard. Defendant first

claimed he had purchased the post, and other building materials located at his home, from a retail lumber supplier and had a receipt evidencing such purchase. He could not produce the receipt and when one of the officers told him a check would be made with the named retail supplier, defendant then said he would "tell you the whole thing". Defendant recanted his earlier story and stated he had bought a truck load of materials and tools in November 1976, from James Lee Taylor, described by officers as a known police character. Defendant pointed out and turned over to the officers the various items he said he bought from Taylor. These included the following property, all identified as Mingo property: cleaning compound, scouring powder, sleeping bag, Rockwell electric drill, a special design barbeque grill constructed at the job corps center for use in government parks and recreation sites in the area, 13 of the specially treated posts, 31 pieces of redwood lumber, 9 bundles of extra-thick wood shingles, 2 five-gallon cans, 2 fifty-five gallon barrels, four-foot ladder, six-foot ladder, sixteen-foot aluminum extension ladder, 27 steel posts, and coils of electrical wiring.[1] Several of the items had GSA numbers on them and one or more had "Mingo" printed on them. "Mingo" was also found on plywood which had been nailed to defendant's garage.

At trial defendant testified that the specially treated posts, the redwood boards, and the shingles were purchased from Taylor. He said he did not know where the Rockwell drill came from and that the barbeque grill, the five-gallon cans, and the fifty-five gallon drums were there when he moved into the house. He said some young men from Mingo had done some painting on the house and brought the three ladders, cleaning compound and scouring powder. He did not know that the coils of electrical wiring were in the house and did not know that the plywood on his garage had the word "Mingo" on it. He denied he had told the officers that each of these items were included in his purchase from Taylor.

 From the foregoing facts and circumstances, the jury could reasonably infer that defendant was familiar with property owned and used at the job corps center and had knowledge of the marking and identification system used on government property. Several of the items carried a GSA number or the camp's name, or was of a unique quality or character which obviously linked it to the job corps center. This, together with the large quantity of stolen items and the conflicting and contradictory statements by the defendant concerning his possession thereof, support an inference of guilty knowledge on the part of the defendant.

The judgment is affirmed.

All concur.

1. Two other electric drills, an electric jig saw, other electrical wiring, and a quantity of cigarettes and chewing gum, were included in the load purchased from Taylor, according to defendant, but were not identified as belonging to Mingo.