STATE of Missouri, Respondent,

v.

Larry Eugene MONTGOMERY, Appellant.

No. 10981.

Missouri Court of Appeals, Southern District, Division One.

Dec. 6, 1979.

David Robards, Joplin, for appellant.

John Ashcroft, Atty. Gen., Richard Thurman, Lisa Martha Camel, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

A jury found defendant Larry Eugene Montgomery guilty of receiving stolen property (§ 560.270 RSMo. 1969) and fixed his punishment at four years in the custody of the Department of Corrections. Judgment and sentence were entered thereon. Defendant appeals.

Defendant contends that the evidence is insufficient to support the conviction and that the trial court erred in denying his motion for judgment of acquittal offered at the close of all the evidence.

In determining the sufficiency of the evidence to support the conviction, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom which tend to support the verdict, and reject contrary and contradictory evidence. *State v. Petrechko,* 486 S.W.2d 217 (Mo.1972). This court must disregard all evidence unfavorable to the state and reject all inferences unfavorable to the state. *State v. Summers,* 506 S.W.2d 67 (Mo.App.1974). The defendant offered the testimony of himself and other witnesses and thus the submissibility of the case will be determined upon all of the evidence. *State v. Sykes,* 372 S.W.2d 24 (Mo.1963); *State v. Chester,* 445 S.W.2d 393 (Mo.App.1969).

The elements of the offense of receiving stolen property are: (1) the accused must receive the property in some way from another and not be the actual captor of the property; (2) the property is stolen property at the time of reception; (3) the accused has guilty knowledge the property was stolen at the time of reception; (4) the accused must receive the property with a fraudulent or criminal intent. *State v. Norman,* 586 S.W.2d 45, 47[1] (Mo.App. 1979); *State v. Inman,* 578 S.W.2d 336, 337 (Mo.App.1979).

It is defendant's position that the evidence fails to show element (1).

"[W]hile an unexplained possession of recently stolen property can give rise to an inference that the possessor is the thief [*State v. Dobson,* 303 S.W.2d 650 (Mo.1957)], an inference cannot be drawn that the possessor of stolen goods received the property from another [*State v. Armstrong,* 555 S.W.2d 640 (Mo.App.1977)], in a prosecution under § 560.270 RSMo. 1969." *State v. Davis,* 590 S.W.2d 418 (Mo.App.1979) (No. 11150, So.Dist.). To similar effect see *State v. Inman,* supra, 578 S.W.2d at 338[5]; *State v. Magers,* 452 S.W.2d 198, 200 (Mo. 1970). One cannot at the same time be a principal in the larceny and in the legal sense a receiver of stolen property. *State v. Inman,* supra, 578 S.W.2d at 337. "It is

an essential element of reception that there be at least two actors involved, 66 Am. Jur.2d, Receiving Stolen Property § 4 p. 298; that accused received the property from another—from some person other than the owner. 76 C.J.S. Receiving Stolen Goods § 5b. p. 8." *State v. Armstrong,* 555 S.W.2d 640, 642 (Mo.App.1977).

"That offense [receiving stolen property] is definitely *not* a lesser offense included within the offense of stealing. It involves different elements,—a buying or receiving, *from another,* of property known to *have been stolen,* with intent to defraud. Indeed that offense may well be said to be wholly inconsistent with the offense of stealing. In receiving stolen property a *prior* theft and knowledge thereof are essential." *State v. Kelly,* 365 S.W.2d 602, 606 (Mo. 1963). (Emphasis in original.)

The information charged that the defendant received the stolen property on or about November 17, 1977. The property allegedly received consisted of three items—a Magnavox stereo unit, a Magnavox color television set, and a Lowery organ, each identified by serial number, and all being the property of Joplin Piano Company.

The warehouse of Joplin Piano Company, located at 214 Main in Joplin, was burglarized on the morning of November 17, 1977. Forcible entry had been obtained to the building. Taken in the burglary were thirteen new television sets, four stereos, three organs and seven demonstrator television sets. Some of the items were in shipping cartons. There was no evidence concerning the identity of the burglar or burglars.

On November 29, 1977, at 10:30 p. m. Joplin police officers, investigating a crime which had occurred in Kansas City, went to the house at 2211 West First, Joplin, because a vehicle reportedly involved in the Kansas City offense was registered in the name of the defendant and the registration showed his address to be 2211 West First.

The officers were admitted to the house. The only two people who were there were the defendant and his brother Mike Montgomery. The defendant was sitting in the

living room watching television. The defendant told the officers that he owned the house and some of the furniture in it and that he was living there. The furniture which defendant admitted he owned consisted of the kitchen stove and the table and chairs in the kitchen. The defendant and his brother accompanied the officers to the Joplin police station and were released later that night.

On December 6, 1977, after first obtaining a search warrant, the Joplin police officers returned to the house at 2211 West First. The stereo, color television set, and the organ described in the information were found in the house and each of those items had been there at the time of the officers' initial visit on November 29. One of them was the television set defendant was watching on November 29. Through the serial numbers the three units were identified as being among those taken in the burglary of the Joplin Piano Company. One unit was still in its carton.

The defendant introduced the evidence of several witnesses in an attempt to show that the house at 2211 West First was occupied by Mike Montgomery and a woman named Billie Bozarth and that defendant did not live there. The defense witnesses testified that from August 1977 through the date of defendant's arrest in December 1977 defendant lived at 2610½ Pearl with a woman named Linda Reisner. It was Linda's testimony that she and defendant had an argument which resulted in the defendant spending two or three nights away from 2610½ Pearl during the latter part of November.

Defense witness Susan Gray testified that she was a sister of Linda Reisner and that in November 1977 the witness moved into 2610½ Pearl. The defendant had previously moved out because of his argument with Linda. A color television set which was among the furniture which Susan moved into 2610½ Pearl had been in the possession of Susan for at least two weeks. It was Susan's testimony that the color television set had been given her by her boyfriend Jerry Laughlin. This television set was identified as one of the items taken in the Joplin Piano Company burglary.

The state argues that the testimony of Susan Gray is sufficient to support the inference that defendant was the receiver and not the taker of the three items described in the information and found in defendant's possession at 2211 West First. The state points out that defendant was not the sole occupant of 2211 West First. The state then argues, "The jury could reasonably infer that any one of these parties (presumably Jerry Laughlin, Mike Montgomery and Billie Bozarth) other than the defendant had stolen the items and the defendant simply received those items."

The evidence does support a finding that Susan Gray received from Jerry Laughlin one of the television sets taken in the burglary. The record, however, contains no evidence concerning any relationship or transaction between the defendant and Jerry Laughlin. In view of the number and size of the items taken in the burglary it may be a reasonable inference that more than one person committed it. If, however, defendant was one of those persons, that is if he was "the actual captor" of the property, he may not be found guilty of receiving the property which he himself took.

The mere fact that Jerry Laughlin delivered one of the stolen items to Susan Gray does not support an inference that the defendant received the three items described in the information from Jerry Laughlin or from any other person. The record is silent with regard to the location or handling of these items following the burglary until they were observed in defendant's house on November 29.

The following language from *State v. Armstrong*, supra, 555 S.W.2d at 643 is apposite:

"The evidence may have made a case of stealing against appellant, but only by resorting to speculation and conjecture may it be said that appellant received stolen property *from another*. There is nothing to show how appellant came into possession of the automobiles; no evidence that appellant obtained them from or through a thief; no

evidence that appellant purchased, leased, borrowed or otherwise acquired them from another person. The situation is akin to that in *State v. Miller*, 433 S.W.2d 281 (Mo. 1968), wherein the court said, l. c. 283: 'The evidence is more consistent with guilt of the charge of stealing than with guilt of the charge of receiving stolen property from another.' "

 The evidence is insufficient to support a finding that the defendant received the property from another person. *State v. Delay*, 455 S.W.2d 1 (Mo.1970); *State v. Magers*, supra, 452 S.W.2d 198; *State v. Miller*, 433 S.W.2d 281 (Mo.1968); *State v. Inman*, supra, 578 S.W.2d 336; *State v. Armstrong*, supra, 555 S.W.2d 640.

 Because the evidence is insufficient to support the verdict, the double jeopardy clause of the Constitution of the United States "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 431 U.S. 1, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). See also *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978).

The judgment is reversed and the defendant discharged.

All concur.