STATE of Missouri,
Plaintiff-Respondent,

v.

William S. SOURS a/k/a Scott Sours,
Defendant-Appellant.

No. 12406.

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied May 10, 1982.

Application to Transfer Denied
June 14, 1982.

David Robards, Public Defender, Joplin, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BILLINGS, Judge.

Defendant William Scott Sours was jury-tried and convicted of three counts of receiving stolen property in violation of § 570.080, RSMo 1978. The trial court granted his motion for a new trial as to

count two[1] and the State dismissed that charge. Sentence and judgment were entered on counts one (felony) and three (misdemeanor) and this appeal followed.[2] We affirm.

Defendant contends the evidence was not sufficient to support his convictions because there was no evidence he received the stolen property from another person, and no evidence he knew or believed the property was stolen at the time he disposed of it.

Trooper Sturdevant of the Missouri Highway Patrol and Officer Kurtz of the Missouri Water Patrol were engaged in covert operations in Jasper County, Missouri, during February and March of 1981. On February 25, 1981, the two officers and a confidential informant went to defendant's home to buy handguns from a person named Billy Johnson. The informant went into the house and returned, advising that Johnson was not there. Defendant came out of the house and upon Trooper Sturdevant telling him he was looking for Johnson concerning buying a handgun or handguns, the defendant stated the guns were not "Billy's" but were his. The trooper asked him what kind of guns he had and defendant said he had a .45 caliber automatic [pistol] and a .357 magnum revolver. Defendant said he would sell the revolver and when the trooper asked to see the weapon, the defendant went into his house and returned with a .357 Smith and Wesson magnum pistol. The trooper purchased the revolver from the defendant for the sum of $250.00. Officer Kurtz mentioned she was interested in a smaller type pistol for her purse and defendant told the officers to come back the

next day and check with him, he would see what he could do.

The two officers returned to defendant's home the next day. Trooper Sturdevant was met on the front porch by the defendant. Defendant said a few friends of his had been arrested the night before for possessing stolen guns and that he was a "little leery of me because I was new in town or he just known me for a short time but then he told me to come on in the house, he had something he wanted to show me." The trooper and Officer Kurtz followed defendant into his house and into a bedroom. Defendant went to a closet and pulled out a sawed-off shotgun. Defendant said he had just finished working on the shotgun and that he had to put some weight "back here" to offset the kick of the gun raising the barrel up. Defendant said he had test fired the shotgun and it was working well. The trooper purchased the shotgun for $100.00 from the defendant. The defendant told Officer Kurtz he had not located her a weapon yet, that he had one but had already gotten rid of it, and suggested the officers check back with him and he would see if he could locate her one.

On March 2, 1981, the officers went to the defendant's house. Defendant asked Officer Kurtz if she was interested in buying a camera. In examining the camera Officer Kurtz observed it had serial and other numbers engraved on it. When she expressed concern about the identification numbers being on the camera and that it "would be traceable" the defendant told her "they would be easy to remove." Officer

1. Count two involved a stolen shotgun. The trial court ruled the jury's verdict was "against the weight of the evidence as to the value of the shotgun." The owner testified that at the time of the theft of the shotgun it had a value of $190.00. The barrel of the shotgun had been sawed off subsequent to the theft and the owner testified that in its altered condition it was of no value to him. See § 570.020, RSMo 1978, for determination of value of stolen property.

2. Defendant was sentenced to 15 years imprisonment on count one as a persistent offender by reason of two prior felonies [§ 558.016, RSMo 1978]. One of the felony convictions was his 1978 five year sentence for armed rob-

bery at which time he was also convicted of armed criminal action. The latter conviction was set aside by the Missouri Supreme Court in *Sours I* and *II, Sours v. State,* 593 S.W.2d 208 (Mo. banc 1980), *vacated,* 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820, *on* remand, 603 S.W.2d 592 (Mo. banc 1980), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981). According to *State v. Haggard,* 619 S.W.2d 44 (Mo. banc 1981), Rendlen, J., dissenting at 54, defendant was released by Missouri prison officials September 25, 1980. The stolen articles involved in all three of the instant counts were taken in house burglaries in February, 1981.

Kurtz purchased the camera from the defendant for $25.00.

Robert Massey testified he lived in Newton County and on February 17, 1981, his home was burglarized and 18 guns were taken, along with three cameras, three flashes and five lenses. He identified the .357 Smith and Wesson revolver as his and stated he paid $265.00 to replace it with one of like kind.

Robert Bullis testified he lived seven miles south of Carthage and that his residence was broken into February 24, 1981, and identified the sawed-off shotgun and camera purchased by the officers as two of the items taken in the burglary. The barrel of the shotgun had not been cut off at the time of the theft and he placed a value of $190.00 on it as of February 24, 1981. His opinion of the value of the camera was $150.00. A defense witness valued the camera at $100.00 to $130.00–$140.00.

In this appeal defendant admits the evidence was sufficient to show that the .357 pistol and the camera had been stolen, that the defendant was in possession of these stolen articles, and that he "sold or in some way transferred the property to the undercover agents." However, defendant argues that there was no evidence the defendant received the stolen items from another party and, therefore, there was no evidence to show that the defendant was not a principal in the larcenies. Defendant says it has long been the law of Missouri that one cannot be a principal in a larceny and at the same time be a receiver of stolen property, citing *State v. Montgomery*, 591 S.W.2d 412 (Mo. App.1979).

In his brief, defendant recognizes *Montgomery* was ruled under the former statute [§ 560.270, RSMo 1969] dealing with receiving stolen property and which required a two-party transaction, and that under the present statute, § 570.080, RSMo 1978, the crime can be committed by either receiving, retaining or disposing of the property but argues the statute still requires a two-party transaction.

In *State v. Jackson*, 594 S.W.2d 377, 378 (Mo.App.1980), this court, in reversing a conviction under the former statute, said:

"Section 560.270 was obviously intended to punish any 'person who shall buy, or in any way receive . . . any property that shall have been [previously] stolen from another.' It is apparent that for there to be a 'person who shall buy' previously stolen property, there must be a two-party transaction between a seller and a buyer. Likewise, in general context of the statute, any 'person who shall . . . in any way receive' from another person, denotes a two-party transfer of possession from a donor, giver, passer, etc., to a receiver, recipient, acceptor, etc. This problem appears to have been obviated by the enactment of § 570.080, RSMo 1978 (L.1977 S.B. 60, eff. 1–1–79) which provides: '1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing it has been stolen . . . .' The words '*retains*' and '*disposes*' can denote single-party transactions which the words in § 560.270 (now repealed) do not." (Emphasis added).

In a similar case, involving a prosecution under the former statute, the Missouri Supreme Court reversed the defendant's conviction and ordered him discharged where the evidence failed to show a two-party transaction. *State v. Davis*, 607 S.W.2d 149 (Mo. banc 1980). However, Seiler, J., noted at 153: "*Under the new criminal code, the offense of receiving stolen property has been redefined and, unlike section 560.270, RSMo 1969, for which appellant was tried, now contemplates single-party transactions.* We believe what the court of appeals recently said in *State v. Jackson*, supra, comparing the old and new provisions defining the offense of receiving stolen property, is instructive . . . ." (Our emphasis).

We adhere to the view we expressed in *Jackson*, and hold that the words "retains" and "disposes" in the current statute denotes single-party transactions and the

two-party rule followed in *Montgomery* and prior cases under the old statute are not applicable in the instant prosecution. Section 570.080, RSMo 1978, was derived from the Model Penal Code § 223.6 (Official Draft and Revised Comments, 1980) which defines the receiving offense in terms similar to those adopted in this State. The comments say that, "If the prosecutor can prove the requisite state of mind to deprive the true owner of the property, it makes little difference whether the jury infers that the defendant took directly from the owner or acquired the goods from another person who committed the act of taking." *Id.* at 233–234. The purpose of the section was to make it impossible for the appellant to argue (as defendant does here) a "technical defense based upon legal distinctions between the closely related activities of stealing and receiving." *Id.* at 232. In a nutshell, we hold the present Missouri statute makes the *act of disposing* of the stolen property the offense of receiving stolen property.

Defendant, as noted earlier herein, further contends the evidence was insufficient to demonstrate that he knew or believed the property in question had been stolen at the time he disposed of it. In ruling this averment, we consider the facts in evidence and all favorable inferences reasonably drawn therefrom in the light most favorable to the State, casting aside and ignoring contrary evidence and inferences. *State v. Hayes,* 597 S.W.2d 242 (Mo.App.1980).

The evidence in this case consisted of the testimony of the two officers, the two burglary victims, and a defense witness as to the value of the camera, together with the pistol, the sawed-off shotgun, and the camera.

The statute under which defendant was prosecuted, § 570.080, RSMo 1978, provides in paragraph 2 as follows:

"Evidence of the following is admissible in any criminal prosecution under this section to prove the requisite knowledge or belief of the alleged receiver:

(1) That he was found in possession or control of other property stolen on separate occasions from two or more persons;

(2) That he received other stolen property in another transaction within the year preceding the transaction charged;

(3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value."

■ In addition to the foregoing, suspicious conduct, deceptive behavior, and other facts and circumstances can be considered in determining whether it would be reasonable for a jury to find defendant knew or had reason to believe the property was stolen. *State v. Hayes,* supra, at 248.

■ Here, defendant was in possession of recently stolen property and his possession thereof was unexplained. Aside from the rule that unexplained possession of recently stolen property can give rise to a presumption the possessor is the thief [*State v. Dobson,* 303 S.W.2d 650 (Mo.1957), *cert. denied,* 355 U.S. 964, 78 S.Ct. 554, 2 L.Ed.2d 539 (1958)], and recognizing this presumption could not be drawn that the possessor of stolen goods received the property from another in a prosecution under the former receiving statute [*State v. Davis,* supra], and, without deciding whether or not the present statute permits such a presumption in a one-party transaction, the possession of recently stolen property is, nevertheless, a circumstance that the jury is entitled to consider, together with other facts and circumstances in the case. "It is often difficult to make direct and positive proof of the accused's knowledge the goods were stolen, and this element may be inferred from certain facts and circumstances." *State v. Hicklin,* 358 Mo. 1016, 1020–21, 218 S.W.2d 564, 565 (1949).

■ The pistol purchased from defendant had been stolen eight days earlier and was sold for less than its fair market value.[3] When asked about a smaller weapon for Officer Kurtz, defendant told the officers to check back with him the next day. That

---

**3.** Section 571.125 and § 571.130, RSMo 1978 require a permit to sell or buy a pistol, revolver or other firearm which can be concealed upon the person.

very night the Bullis' residence was burglarized and defendant was in possession of the Bullis' shotgun the next day. The defendant had altered the shotgun by cutting off the barrel and putting additional weight in the stock to offset the kick of the shortened barrel.[4] Before the sale of the shotgun and when the officers first arrived at defendant's home on February 25, 1981, the defendant expressed he was "leery" of dealing with Trooper Sturdevant because he did not know him well and friends of his had been arrested the night before for possessing stolen guns. The shotgun was sold for approximately one-half of its market value. A few days later, when Officer Kurtz purchased the camera, the defendant told her the identification marks thereon would be easy to remove when she expressed concern about the traceability of the camera. The camera was sold for much less than its market value.

The suspicious behavior and various remarks of the defendant, his alteration of the shotgun, and possession and sale of the recently stolen items for less than their fair value, are sufficient facts and circumstances to warrant the jury's finding knowledge or belief of the defendant that he was trafficking in stolen property. *State v. Johnson*, 580 S.W.2d 254 (Mo. banc 1979); *State v. Cacioppo*, 373 S.W.2d 479 (Mo.App.1963); *State v. Eggleston*, 27 S.W.2d 726 (Mo.App. 1930).

■ Defendant's remaining point erroneously states he was convicted of a felony under count three and that the evidence as to the value of the camera did not support such a finding. Suffice to say, the jury found him guilty of a misdemeanor on count three.

The judgment is affirmed.

MAUS, C. J., and HOGAN and PREWITT, JJ., concur.

4. See 26 U.S.C.A. §§ 5841–5845 and 18 U.S.C.A. §§ 921–924 concerning sawed-off shotguns.