STATE of Missouri, Respondent,

v.

Ezell APPLEWHITE, Appellant.

No. 13632.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 30, 1984.

Motion for Rehearing or Transfer
Denied Dec. 20, 1984.

Application to Transfer Denied
Jan. 15, 1985.

Nancy Hentig Narrow, Public Defender, Judicial Circuit 33, Daniel A. Beatty, Asst. Public Defender, Judicial Circuit 33, Benton, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant, tried by the court without a jury, was found guilty of the class C felony of receiving stolen property of a value of $150 or more, § 570.080, RSMo 1978, and sentenced as a persistent offender, § 558.-016, RSMo Cum.Supp.1983, to 15 years' imprisonment. Appellant maintains the evidence was insufficient to support the finding of guilty, and he complains about his cross-examination by the prosecuting attorney.

In determining the sufficiency of the evidence after a finding of guilty, we accept as true all evidence tending to prove the accused's guilt together with inferences favorable to the State that can be reasonably drawn therefrom, and we disregard all contrary evidence and inferences. *State v. Giffin*, 640 S.W.2d 128, 130[2] (Mo.1982).

So viewed, the evidence establishes that between 5:30 p.m., August 6, 1983, and 9:00 a.m., the next day, a Bogan amplifier, microphones and related paraphernalia, of an aggregate value exceeding $150, were stolen from the West End Baptist Church in Sikeston.

Between 3:00 and 4:00 p.m., August 29, 1983, appellant, accompanied by another man, entered Brown's Automotive, an automobile body repair shop operated by Milton Brown in Sikeston. Brown, who was working on an automobile at the time, testified that appellant asked whether he (Brown) would be interested in "some amplifiers or a mike." Brown expressed interest in a microphone if it "would take heat from the outside sunlight on it without squealing." Brown quoted appellant as saying he "would bring it by."

Appellant and his companion (with whom Brown was unacquainted) then departed.

According to Brown, appellant returned later that afternoon, alone, and brought in an amplifier, microphones and other paraphernalia, placing them on the hood of a customer's car. Brown explained: "He was trying to get them hooked up to where he could show me how the mike run. I didn't want to buy anything that wasn't no good."

Meanwhile, detective Benny Thurston of the Sikeston Public Safety Department, in response to a phone call from Brown that appellant "was there trying to sell a PA system," arrived at Brown's Automotive and, unbeknownst to appellant, began watching appellant and Brown.

Thurston related that appellant "had the microphones in his hands like he was getting ready to hand them to Mr. Brown." At that point, Thurston confronted appellant, asking appellant where he had gotten the equipment. Thurston quoted appellant as saying he "got it from a guy in Malden." Thurston thereupon arrested appellant "for investigation of receiving stolen property."

The amplifier, microphones and allied items were seized by police and later identified as the property of West End Baptist Church by a church official.

Appellant, testifying in his defense, said he was riding his "10-speed" on August 29, 1983, when a "fellow named Green," who "was in a car," stopped him and asked whether he knew Brown. According to appellant, he replied that he did, and he led Green to Brown's Automotive. Upon arrival, Green asked appellant to see whether Brown was there. Appellant entered, located Brown, then stepped back outside and told Green.

Appellant testified that Green thereupon took three sacks out of the back seat of his car, carried them into the building and "put them on the hood of this car that Mr. Brown was working on." At that point, according to appellant, Green instructed him to tell Brown that he (Green) "was wanting to sell it for $200." Green then departed, explaining that he was going to a service station to get gasoline.

Appellant recounted that he then got Brown's attention and relayed Green's message. Appellant and Brown then removed the apparatus from the sacks and were "working the knobs and everything" when the arrest occurred.

Appellant testified he told the detective that Green was trying to sell the equipment to Brown, and that he (appellant) had not brought the items there.

Appellant's attack on the sufficiency of the evidence, as we understand it, is that it would have been impossible for him to deliver the amplifier, microphones and other equipment to Brown's Automotive on a bicycle. Appellant argues that his testimony about arriving there on a bicycle was corroborated by Brown, who testified that he saw a bicycle outside his shop when appellant was arrested and that appellant asked him to take the bicycle to his father. Appellant also asserts that Brown corroborated his testimony about Green, in that Brown testified appellant was accompanied by another man when appellant first entered Brown's Automotive.

■ Whether appellant's version of the events of August 29 was true, or the version by Brown and Thurston was true, was for the trial court to decide. *State v. Fingers*, 564 S.W.2d 579, 584[14] (Mo.App. 1978). The trial court, as trier of the facts, had leave to believe or disbelieve all, part or none of the testimony of any witness. *State v. Gamble*, 649 S.W.2d 573, 576–77[9] (Mo.App.1983).

The trial court, after hearing the testimony, announced to appellant:

"I think you are a smart enough man to know that anybody walking couldn't really buy that story. Therefore, based upon the evidence that's before this Court, I have no alternative but to find you guilty of the charge beyond a reasonable doubt. In all truth, Mr. Applewhite, I just don't believe it could have happened that way."

It was for the trial court, not us, to weigh appellant's contention that he could not have hauled the stolen equipment to Brown's Automotive on his bicycle. The trial court had full opportunity to consider the point, as the equipment was brought to court and received in evidence at appellant's trial.

It should be noted, however, that appellant's guilt did not hinge on whether it was possible to carry the stolen items to Brown's Automotive on a bicycle. Neither Brown nor Thurston testified that he saw how the items reached Brown's Automotive. The items were already there when Thurston arrived, and all Brown knew was that appellant had carried them inside. It is entirely possible that the items were brought to Brown's Automotive by automobile, at appellant's direction, and that appellant carried them in, alone. Appellant, by his own testimony, had been in the company of a man driving an automobile earlier that afternoon. One can accept the testimony of Brown and Thurston as true without having to assume that appellant carried the equipment to Brown's Automotive by bicycle.

A more fundamental question—not raised by appellant—is whether the evidence was sufficient to support a finding that he knew the equipment was stolen or believed that it was. That state of mind is one of the elements of the offense of receiving stolen property.[1] § 570.080.1, RSMo 1978; *State v. Freeman*, 667 S.W.2d 443, 446[1] (Mo.App.1984).

In that regard, we note that suspicious conduct, deceptive behavior and false statements to police can give rise to an inference of guilty knowledge by a defendant. *State v. Davis*, 590 S.W.2d 418, 419[3] (Mo.App.1979).

Here, at the time of his arrest, appellant told Thurston that he had gotten the equipment "from a guy in Malden." Yet, at trial, appellant disavowed any knowledge of the equipment until (according to appellant) Green carried it into Brown's Automotive.

Additionally, Brown testified that appellant, during the incident at Brown's Automotive, stated that the equipment was not stolen. That statement by appellant was, of course, false, as there is no question that the equipment was stolen from West End Baptist Church.

Furthermore, had the events of August 29, 1983, occurred as testified to by appellant, one would have expected Green to return to Brown's Automotive to inquire whether Brown was going to purchase the equipment. There was, however, no testimony that Green ever came back. Accepting appellant's version requires an assumption that Green abandoned a sound system for which he was asking $200, the incredibility of which is self-evident.

We are, consequently, persuaded that the evidence is sufficient to support a finding that appellant knew the equipment was stolen or believed that it was. Appellant's challenge of the sufficiency of the evidence is, accordingly, denied.

Appellant's second point asserts the trial court erred in allowing the prosecuting attorney, during the cross-examination of appellant, to "force" appellant to admit that the description appellant had given of Green was so similar to appellant himself that the trial court would "deduce" that appellant "was not telling the truth."

The first frailty in this point is that the objection appellant makes on appeal was not voiced at trial. The only objection below was that the prosecuting attorney, in describing appellant's facial hair, referred to it as a "beard," when it should have been characterized as "sideburns and a mustache." A point on appeal must be based upon the theory voiced in the objection at trial, and a defendant cannot expand or change on appeal the objection as made. *State v. Cannady*, 660 S.W.2d 33, 37[6] (Mo.App.1983); *State v. Jackson*, 635 S.W.2d 495, 496[3] (Mo.App.1982).

However, even had the point been preserved for appellate review, it would be unavailing. A defendant in a criminal case who elects to testify in his own behalf may be cross-examined as to any matter referred to in his direct examination and may be contradicted and impeached as any other witness. § 546.260, RSMo 1978; *State v. Rice*, 522 S.W.2d 335, 337–38[5] (Mo.App. 1975). In such cross-examination, the State is not confined to a categorical review of the evidence given by the defendant on direct examination but may examine him in detail as to matters generally referred to in his examination in chief. *State v. Murphy*, 592 S.W.2d 727, 731[4] (Mo. banc 1979).

1. Since § 570.080, RSMo 1978, became effective (January 1, 1979), it has been unnecessary, in a prosecution for receiving stolen property, to prove that the accused received the property from another culprit, that is, the present statute does not require a two-party transaction. *State v. Sours*, 633 S.W.2d 255, 257–58 (Mo.App.1982); *State v. Davis*, 607 S.W.2d 149, 153[6] (Mo. banc 1980). Now, one is guilty of receiving stolen property if he *retains* the property of another with the purpose of depriving the owner of a lawful interest therein, knowing that the property has been stolen or believing that it has been stolen. *Sours*, 633 S.W.2d at 257–58; *Davis*, 607 S.W.2d at 153.

Appellant, having testified at length about the actions of Green, was subject to cross-examination concerning Green, including Green's physical description and identifying characteristics. The point is denied.

Judgment affirmed.

PREWITT, C.J., and HOGAN, TITUS and MAUS, JJ., concur.